

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

**AP-76,101**

---

**RAUL CORTEZ, Appellant**

**v.**

**THE STATE OF TEXAS**

---

**Appeal from Case 416-82415-07 of the
416th Judicial District Court of
Collin County**

---

Womack, J., filed an opinion concurring in part and dissenting in part, in which Price and Johnson, JJ., joined.

I concur with the Court's decision to affirm the judgment of guilt. However, I believe that Venire Member Forsyth should have been disqualified for cause, and therefore I would sustain the appellant's fifth point of error and remand the case for a new punishment hearing.

The Court states that Forsyth gave potentially disqualifying answers "only when she became confused about the application of the law in death penalty cases. But when she was guided, step-by-step, through a proper application of the law as it relates to a juror's duties, Forsyth stated that she would be able to follow the law …."

This description gives the impression that Forsyth said some potentially disqualifying things, but *then* had the law explained to her and agreed to follow the law. A review of her voir dire examination, though, shows the reverse: Forsyth first had the law explained to her and stated that she understood it. Afterward she stated that she would require the defense to produce evidence in order to answer no to the future dangerousness special issue.

During its examination, the State informed Forsyth that at the punishment phase the State had the burden of proving beyond a reasonable doubt that the appellant would be a continuing threat to society:

> [Q.] Now remember you're only at that point if you have already found the defendant guilty of capital murder.
> You are not going to erase what you have heard obviously, because up to that point you will have heard all of the details of the crime.
> The details of the crime itself are very important, and they are very important in deciding whether or not someone should get a death sentence, but that's not all you have. You may have additional information, additional evidence presented to you in the punishment phase. And that evidence may be presented by the State, it may be presented by the defense.
> Remember, of course, the defense has absolutely no burden, so whatever evidence you hear, whether it's something from the guilt/innocence phase, whether it's additional evidence from the State or additional evidence from the defense, you have to be willing to consider everything, every single thing and honestly consider every single thing you hear to see whether you believe that a death sentence or life sentence is appropriate.
> Is that something that you will do?
>
> A. Yes.
>
> Q. And again, place absolutely no burden on the defense at that point?

A. Yes.

The State later told Forsyth again that "the burden of proof was on the State beyond a reasonable doubt to answer [the future dangerousness special issue] yes," but Forsyth herself made no other comments on the subject.

Defense counsel questioned Forsyth on the matter:

Q: Now in [the future dangerousness question] the State again has to prove beyond a reasonable doubt that the person – that there is a probability that the person is a continuing threat to society, and you indicated that you would not require the defendant to testify in the first part of the trial, the guilt/innocence part of the trial, and that you could give him his Fifth Amendment right, you wouldn't have to hear from him before you could make a decision. And a lot of people say that, but then when it gets to punishment, if they find the person guilty, they want to hear from him in punishment and they want the defense to put him on the stand to show the jury that there are certain things, there is remorse or whatever, and they also want the defense to prove to them that he is not a continuing threat to society, even though the law is that the State has got to prove that he is. And a lot of people want to reverse it. They want the defendant to prove that he is not, and they want to hear from the defendant.
Let me ask you first, would you want the defense to prove that the defendant is not a continuing threat to society?

A. I would, yeah. I would want that, them to prove – to try to prove that he would not be.

Q. In other words, you would want the defense to prove to you –

A. Everybody has to prove their side.

Q. You would want both sides to prove something to you?

A. Yeah.

Q. Do you think that the defense should produce evidence to demonstrate that he would not be a continuing threat to society?

A. Just what his past was, where his mind is now, how he feels about what happened.

Q. Would you want to hear from the defendant in the punishment phase of a capital murder trial?

A. Not necessarily.
That person would have an opportunity to talk to his attorneys and the attorneys are there to talk for him, so ... [*sic*]

Q. But you would want the defense to give you evidence to show you that the defendant is not a future – is a probability of future danger to society; is that right?

A. I think that's fair.

Near the end of his questioning, defense counsel returned to this subject:

Q. In answer to that Special Issue Number 1, [*sic*] is the defendant a continuing threat to society, I believe you said awhile ago that you would want the defendant to prove to you that he was not a continuing threat to society; is that right? Is that what you meant?

A. If he wants a lighter sentence or a not guilty, yes, he would have to prove that to me.

Q. No, we are not talking about a not guilty at that point.

A. Well, okay, a lesser sentence or whatever, yes, I would want that person to prove that to me.

Next, defense counsel asked whether Forsyth would be able to make arrangements for her children if she was selected for the jury, and then the trial court asked her to step outside.

Defense counsel challenged Forsyth for being a "burden shifter":

[W]hat is perfectly clear is this woman would want the defense to prove that he was not a continuing threat to society and it would be our burden to do that. And whether she understands what the legal mumbo jumbo is, the bottom line for her is, she wants us to prove that he is not a continuing threat ….

The Court says that Forsyth made her disqualifying statements only when she was "confused," but we have no way of knowing her mental state at the time. The fact that she referred to "a lighter sentence or not guilty" might *seem* to indicate confusion, but it also might

have simply been a slip of the tongue as she was attempting to explain her nonconfused position. Or it might indicate that she thought of answering no to the future dangerousness special issue in terms of finding the defendant "not guilty" of being a future danger. This would not be a confused way for a layperson to think of the matter. The burden of proof for finding a defendant guilty is the same as the burden of proof for finding a defendant to be a future danger – the State must prove it beyond a reasonable doubt. Or her answers might indicate that, regardless of what portion of the trial defense counsel wanted to discuss at the moment, Forsyth would have placed a burden on the defense during *both* phases of the trial.

Inarticulateness is not synonymous with confusion. If we give ourselves the discretion to wave away disqualifying voir dire answers simply by stating that the venire member had become "confused," without the record actually showing confusion, the great discretion we give to trial court voir dire rulings becomes unfettered discretion.

Forsyth, for her part, did not make any statements indicating that she considered herself to be confused about the application of the law. After defense counsel made his objection, there was no statement by either the State or the trial court indicating that they believed Forsyth was confused. Rather, the State's argument was that Forsyth merely "wanted" to hear evidence from the defense but would not require it (an argument belied by Forsyth's repeated use of the imperative). Defense counsel asserted that Forsyth may not have understood the concept of burden of proof, but he did not believe she was confused when explaining how she would make a decision on the case.

Perhaps if the State or the trial court had taken the opportunity, after the defense's questioning ended, to ask her about these statements we would have enough information in the

record to determine whether Forsyth was confused when answering the defense's questions. But they did not, and we are left with Forsyth's unambiguous statement that she would place a burden of proof on the defendant.

Forsyth's earlier answer to the State's questioning ("And again, place absolutely no burden on the defense at that point?" "Yes") came at the end of a lengthy compound question, and, compared with the clarity of her later answers, is ambiguous. While we give great deference to the trial court in granting and denying challenges for cause, examining Forsyth's testimony as a whole, I believe that a one-word response to a compound question is insufficient to support the trial court's ruling in this case.

The trial court could have kept Forsyth's apparent bias against the law from harming the appellant in numerous ways. It could have spoken with her to further explain the law, and asked her additional questions to see if she really meant what she had just said. It could have granted the appellant additional strikes, something many trial courts do in capital cases in order to guard against this sort of error. Or, after listening to Forsyth explain her bias against the law, it simply could have excused her for cause even if it believed she was confused.[1] Because it did none of these things, the appellant was forced to exercise one of his statutorily allotted strikes to Forsyth. I believe this requires a new punishment hearing, and I respectfully dissent from the Court's judgment affirming the punishment portion of his sentence.

Filed September 14, 2011
Do not publish.

---

[1] *See Jones v. State,* 982 S.W.2d 386, 394 (Tex. Cr. App. 1998) ("The venire comprises so many jurors who are clearly qualified that it is unnecessary to err by denying a challenge for cause on a close question."); *Threadgill v. State*, 146 S.W.3d 654, 674 (Tex. Cr. App. 2004) (Womack, J., concurring).